CLERK'S COPY

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

FILED
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

99 MAR 10 PM 2: 18

CLERK-SANTA FE

UVALDO VELASQUEZ,

      Plaintiff,

vs.                                         No. CV 98-291 SC/LCS

WILLIAM J. CLINTON, President,
United States of America, and
GARY JOHNSON, Governor of the
State of New Mexico, in their capacities
to faithfully execute the law,

      Defendants.

## MEMORANDUM OPINION AND ORDER

This case is before the Court on the following matters: (1) Motion to Dismiss by Defendant Gary Johnson, filed May 12, 1998 (Doc. No. 9); (2) Request for a Setting by Plaintiff, filed August 14, 1998 (Doc. No. 15); (3) Motion to Dismiss by Defendant William J. Clinton, filed October 30, 1998 (Doc. No. 22); and (4) Motion for Judicial Notice by Plaintiff, filed December 22, 1998 (Doc. No. 27).[1] For the reasons contained in this opinion, the motions to dismiss will be GRANTED, and the other motions will be DENIED.

---

[1] Defendant Johnson withdrew his Motion to Dismiss for Insufficiency of Service of Process (filed on April 1, 1998; Doc. No. 2) by Notice filed on June 16, 1998 (Doc. No. 14).

The Complaint is styled "Complaint of Conspiracy to Deny and Deprive Civil Rights," and purports to be brought pursuant to the United States Constitution, and several federal statutes, including 42 U.S.C. §§ 1983, 1985 and 1986. Plaintiff alleges that federal jurisdiction exists pursuant to 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights).

Plaintiff's claims appear to be an attempt to gain control over and ownership of the Piedra Lumbre Land Grant, a private land grant created by the King of Spain in 1766. The land is allegedly located in the State of New Mexico and over the years has been alienated and divided among several different owners, who are not identified or named as defendants.[2] Plaintiff alleges that for over 40 years he has actively searched to prove his descent from the original 1766 land grant grantee and that he now has formal proof of his direct descendence which entitles him to sole ownership of the entire land grant. Compl. ¶¶ 2, 8 at 2, 5.

Plaintiff sues Defendant Gary Johnson in his official capacity as Governor of the State of New Mexico, and Defendant William J. Clinton in his official capacity as President of the United States. He alleges that state and county government agents have conspired to carve up and sell his land grant under color of law in violation of an international treaty, the United States Constitution, and the New Mexico Constitution.

---

[2] Although not alleged by Plaintiff, the United States acknowledges in its motion that it owns land located within the land grant; the State of New Mexico may or may not own such land.

The international treaty is commonly known as the Treaty of Guadalupe Hidalgo. 9 Stat. 922. Plaintiff claims that the treaty and constitutions have been ignored, under color of law, to his detriment. He alleges that numerous "encroachers" now possess, control and occupy his land.

The relief Plaintiff requests is for an order confirming him as the proper owner of the land grant and returning the land grant to him together with improvements made to the land and without any encumbrances, preventing the state and federal governments from taking and from allowing to be taken parcels of the Piedra Lumbre Land Grant from him, and preventing further development projects involving the land grant properties.

**I. Governor Johnson's Motion to Dismiss.**

*A. Jurisdiction.* Defendant Johnson contends that there is no federal jurisdiction for Plaintiff's claims. Plaintiff is proceeding *pro se* and so I have construed his Complaint broadly. Plaintiff claims that he has been deprived of his property under color of law. Federal jurisdiction exists under 28 U.S.C. §§ 1343 and 1331 to remedy an unconstitutional deprivation of property under color of state law pursuant to 42 U.S.C. § 1983. Lynch v. Household Finance Corp., 405 U.S. 538 (1972). Therefore, I will not dismiss this case for lack of federal jurisdiction.

*B. Eleventh Amendment Immunity.* Defendant Johnson argues next that this is a suit against him in his official capacity, seeking to quiet title in lands located in this state,

3

and as such is barred by the doctrine of Eleventh Amendment sovereign immunity.

Assuming that the State of New Mexico owns some of the land of which Plaintiff is trying to gain ownership, it is true that Plaintiff could not maintain a quiet title action against the state in federal court. New Mexico has a statute that specifically grants consent to sue the state in certain quiet title actions, N.M. Stat. Ann. 1978 § 42-6-12 (previously compiled as N.M. Stat. Ann. 1953 § 22-14-12). Additionally, the New Mexico Supreme Court has abolished the state's judicially-created sovereign immunity in quiet title actions which fall outside the scope of that statute, Brosseau v. New Mexico State Highway Dep't, 92 N.M. 328, 330-31, 587 P.2d 1339, 1341-42 (1978). Nevertheless, the Eleventh Amendment is a bar to quiet title actions against the state in federal court because neither the statute nor case law specifies that the state has waived its Eleventh Amendment immunity from being sued in federal court. *See* Edelman v. Jordan, 415 U.S. 651, 677 n.19 (1974) (waiver of sovereign immunity in state courts does not constitute abandonment of Eleventh Amendment immunity in federal courts); Griess v. Colorado, 841 F.2d 1042, 1044 (10th Cir. 1988) (waiver must specify applicability to federal court jurisdiction). *See also* Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 117 S. Ct. 2028, 2040 (1997) (parties and Court assumed quiet title actions not cognizable against state in federal court because of Eleventh Amendment immunity).

The characterization of this case as a quiet title action, however, is too narrow. This action may be construed as one to remedy an unconstitutional taking of property

4

under color of state law pursuant to 42 U.S.C. § 1983. Congress did not abrogate the states' Eleventh Amendment immunity when it enacted 42 U.S.C. § 1983. Quern v. Jordan, 440 U.S. 332, 345 (1979). Thus, the Eleventh Amendment prevents the recovery of any damages or other retrospective relief from the state or its officials.

However, Plaintiff's complaint can be read as seeking an order barring the state from allowing land located within the land grant boundaries to be transferred to third parties, or to be developed by third parties. A civil rights action against a state official seeking only prospective injunctive relief may survive an Eleventh Amendment immunity defense if it meets certain requirements. *See* Ellis v. Univ. of Kansas Med. Center, 163 F.3d 1186, 1198 (10th Cir. 1998) (applying doctrine of Ex Parte Young to allow claims under §§ 1981, 1983, and 1985 for prospective injunctive relief against state officials where relief did not (1) implicate special sovereignty interests or (2) constitute functional equivalent to form of legal relief that would otherwise be barred by Eleventh Amendment). I will assume for purposes of discussion that a civil rights claim to bar the state from allowing land belonging to third parties to be transferred to others or to be developed by others might not be barred by Eleventh Amendment immunity.

*C. Statute of Limitations.* Putting aside the potentially curable defects of failure to state a claim against Defendant Johnson and failure to join indispensable parties, there are insurmountable problems with a potential civil rights claim, the most glaring of which is the statute of limitations.

5

The statute of limitations for a civil rights claim in New Mexico is three years. Wilson v. Garcia, 471 U.S. 261, 279-80 (1985) (adopting uniform rule that state statutes of limitations for personal injury are to be borrowed in § 1983 cases). Federal law controls the issue of when a federal cause of action accrues. Baker v. Board of Regents of the State of Kansas, 991 F.2d 628, 632 (10th Cir. 1993). The statute of limitations begins to run for purposes of a § 1983 civil rights action "when the plaintiff knows or has reason to know of the injury which is the basis of the action." Smith v. City of Enid, 149 F.3d 1151, 1154 (10th Cir. 1998) (*quoting* Baker, 991 F.2d at 632).

> Since the injury in a § 1983 case is the violation of a constitutional right, *see* Garcia v. Wilson, 731 F.2d 640, 650 (10th Cir.1984), *aff'd,* 471 U.S. 261 (1985), such claims accrue 'when the plaintiff knows or should know that his or her constitutional rights have been violated.' Lawshe v. Simpson, 16 F.3d 1475, 1478 (7th Cir. 1994). This requires the court 'to identify the constitutional violation and locate it in time.' Id.

Smith v. City of Enid, 149 F.3d at 1154.

Because the Complaint is so unspecific about the role of any state official, it is nearly impossible to identify and locate the alleged constitutional violation. Reading the complaint broadly, Plaintiff might be alleging that state officials have engaged in some regulatory activity in which they approved the transfer of land in the land grant in violation of the United States Constitution, international treaty, or federal law.

In ¶¶ 2 and 3 of the Complaint, Plaintiff's allegations show clearly that he has

6

known of his claim for over 40 years. In an attempt to get around the statute of limitations Plaintiff states:

> The formal line of direct heritage between the original grantee and Plaintiff Velasquez became known to him and validated for him within 90 days of filing his complaint voiding any statute of limitation claims.

Pl. Resp. at 3.[3] Even if Plaintiff could prove that he only "validated" his heritage within three years of the filing of his Complaint, that would not toll the running of the statute of limitations. It is not alleged, nor could it be, that Plaintiff's heritage was concealed from him by Defendant, and Plaintiff's assertion that he began his heritage search some 40 years ago negates that he acted with due diligence in filing this suit. There is simply nothing either alleged in the Complaint or revealed in any other pleadings that would save this case from the statute of limitations.[4]

**II. Plaintiff's Request For A Setting.** Plaintiff requests that the Court set a

---

[3] Plaintiff appeared in at least one case involving land ownership in the Piedra Lumbre Grant over a year before he filed this case. *See* Joe R. Jacquez, et al. v. Property Tax Division of the New Mexico Taxation and Revenue Department, *et al.*, No. RA 96-2602 (1st Jud. Dist. Ct., County of Rio Arriba, State of N.M.). Def. Reply Mem., Ex. 1.

[4] A quiet title action against private parties would also succumb to the applicable statute of limitations, which is 10 years for property granted by Spain, Mexico, or the United States. N.M. Stat. Ann. 1978, § 37-1-21. This statute has been held constitutional, Montoya v. Gonzales, 232 U.S. 375 (1914). It applies to Spanish or Mexican land grant claims. Ward v. Rodriguez, 43 N.M. 191, 193-94, 88 P.2d 277, 279-80, *cert. denied,* 307 U.S. 627 (1939).

7

hearing on this case so he can establish his ownership of the Piedra Lumbre Land Grant based upon his direct descent from a grantee in 1902. The Court does not usually set hearings on pre-trial motions. *See* Local Rule 7.8(a). The entire case is being dismissed, and a hearing is not necessary, so this request will be denied.

**III. Federal Defendant's Motion to Dismiss.** Defendant Clinton moves to dismiss for lack of jurisdiction and failure to state a claim.

*A. Jurisdiction - Sovereign Immunity.* Plaintiff brings this action against Defendant Clinton in his official capacity as President of the United States. It is, therefore, in effect an action against the United States, and is barred by the doctrine of sovereign immunity unless immunity has been waived by Congress. Federal Deposit Insurance Corp. v. Meyer, 510 U.S. 471, 475 (1994); Kentucky v. Graham, 473 U.S. 159, 165-67 (1985); United States v. Mitchell, 463 U.S. 206, 212 (1983); United States v. Testan, 424 U.S. 392, 399 (1976); Atkinson v. O'Neill, 867 F.2d 589, 590 (10th Cir. 1989).

One claim for which sovereign immunity has been waived is a quiet title action against the United States. *See* 28 U.S.C. § 2409a(a) (waiving sovereign immunity for certain quiet title actions) and 28 U.S.C. § 1346(f) (granting federal jurisdiction for quiet title actions). The federal defendant acknowledges that the United States owns land located within the Piedra Lumbre Grant. Even though in his response, Plaintiff appears to

8

eschew a quiet title action against the United States,[5] I shall construe his Complaint to state such a claim.

Reading Plaintiff's complaint broadly, it is also conceivable that he is attempting to assert a Bivens claim against Defendant Clinton, or possibly against some other federal agents, in their individual capacity for violation of his constitutional rights. *See* Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971). I shall, therefore, construe this as a Bivens action, i.e., one which seeks to impose personal liability and damages on a federal official for the violation of a constitutional right. Id. A suit against a federal agent in his individual capacity acting under color of federal authority would not be barred by sovereign immunity, insofar as certain constitutional claims are alleged. Davis v. Passman, 442 U.S. 228, 245-48 (1979); Bivens, 403 U.S. at 395-97; Pleasant v. Lovell, 876 F.2d 787, 793-94 (10th Cir. 1989); Chapoose v. Hodel, 831 F.2d 931, 935 (10th Cir. 1987); *see also* Schweiker v. Chilicky, 487 U.S. 412 (1988) (evolution of Bivens remedy discussed).

*B. Failure to State a Claim.* Velasquez fails to allege any personal involvement by Defendant Clinton in the allegedly unconstitutional conduct or treaty violation, nor are his pleadings specific as to the conduct of any federal agent. A plaintiff must allege something more than conclusory, vague or general allegations of violations of

---

[5] Plaintiff states that "all he wants to do is prove, while he is alive with the knowledge gained over the past 40 years, that he is a blood-line descendant of the original grantee of the Piedra Lumbre Land Grant." Pl. Resp. at 2.

constitutional rights and must show each defendant's involvement. *See* Kite v. Kelley, 546 F.2d 334, 337-38 (10th Cir. 1976) (liability of a Bivens defendant can only be predicated on personal involvement or participation in the alleged unconstitutional acts). Even a *pro se* plaintiff must at least allege sufficient facts to state a colorable constitutional claim. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991); Williams v. Meese, 926 F.2d 994, 998 (10th Cir. 1991). Rather than dismissing on that basis and allowing Plaintiff an opportunity to amend his complaint, I proceed to a discussion of the statute of limitations.

*C. Statute of Limitations.* The statute of limitations is a bar to either a quiet title action against the United States, or a Bivens action against a federal agent individually.

*1. Quiet Title.* If this case is construed as a quiet title action, there will inevitably be a statute of limitations problem. The statute which waives sovereign immunity of the United States imposes a 12-year limitation: "Such action shall be deemed to have accrued on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States." 28 U.S.C. § 2409a(g). If Plaintiff has known of his ownership claim for 40 years, as discussed above, his claim is long stale.

*2. Civil Rights.* The same is true of a Bivens claim against Defendant Clinton or some other federal officer in his individual capacity. Bivens actions, like § 1983 actions, are subject to the statute of limitations of the general personal injury

10

statute of the state where the action arose. Industrial Constructors Corp. v. United States Bureau of Reclamation, 15 F.3d 963, 968 (10th Cir. 1994). The statute of limitations for such a claim would be three years. Id.; Wilson v. Garcia, 471 U.S. 261, 279-80 (1985). For the same reasons the civil rights claim against the state defendant must be dismissed on statute of limitations grounds, so would a Bivens claim have to be dismissed.

**IV. Plaintiff's Motion for Judicial Notice.** Plaintiff requests that the Court take judicial notice of several matters regarding his view of our republican form of government, *stare decisis*, and sovereign immunity under the Constitution and laws of the United States. These matters are in the form of legal argument purportedly in support of Plaintiff's efforts to avoid dismissal, rather than adjudicative facts either "generally known within the territorial jurisdiction of the trial court" or "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned," as required by Fed. R. Evid. 201(b). This motion will be DENIED.

NOW, THEREFORE, IT IS ORDERED that the Motion to Dismiss by Defendant Gary Johnson, filed May 12, 1998 (Doc. No. 9), is hereby GRANTED;

IT IS FURTHER ORDERED that Plaintiff's Request for a Setting filed August 14, 1998 (Doc. No. 15) is hereby DENIED;

IT IS FURTHER ORDERED that the Motion to Dismiss by Defendant William J. Clinton, filed October 30, 1998 (Doc. No. 22), is hereby GRANTED; and

IT IS FURTHER ORDERED that Plaintiff's Motion for Judicial Notice filed December 22, 1998 (Doc. No. 27) is hereby DENIED.

_____
SENIOR UNITED STATES DISTRICT JUDGE

For Plaintiff: Uvaldo Velasquez, pro se

Counsel for Defendant Gary Johnson: Bennett S. Cohn, Ass't Att'y Gen, Santa Fe. N.M.